The Honorable Judge of the United States Court of Appeals in and for the seven judicial circles, herein, herein, herein, all persons having business before this Honorable Court are admonished to draw minutes to their attention. As the Court is now sitting, God save the United States and this Honorable Court. Good morning, everyone. Our first case for argument this morning is Steidinger v. Blackstone Medical. Ms. Garland, whenever you're ready. Good morning. May it please the Court, Jessica Garland for the plaintiffs. The question in this case is whether the term telephone call in subsection 227C of the TCPA covers text messages. It does, because as Congress and the courts have recognized, the term call in the TCPA covers text messages and the use of telephone to modify call doesn't narrow the meaning of call to exclude text messages. I'll start by explaining why the term call in the TCPA covers text messages and then turn to why the term telephone call does the  Why don't you start with telephone? Yes, Your Honor. I think that's much harder for you, based on the 1991 definition. Yes, Your Honor. I think the reason why Congress used the word telephone in section C-5 was not to limit the device that a call was coming from, it wasn't a modality limitation. So if you look at the statute as a whole, it's clear that when Congress refers to telephone calls rather than calls, that's because it's referring to But now a telephone is anything. A telephone is a computer. Right? I mean, I have my pocket right now. I think it's still in my pocket. I mean, I can do anything from this phone. Anything, anywhere in the world. I mean, it's maybe more powerful than my computer in my  So the definition that my friend on the other side points to is a telephone is a means to send a communication orally or by sound. We don't dispute that's how you identify a telephone, but just because a telephone has one particular ability doesn't mean If this is a purely, I think, statutory question. And so that's really what we've been asked to answer this morning is, and that's why I believe Judge Gersh is asking, the basis of what were the Congress considering in the essence of a telephone under the TCPA? I think that's really the starting principle before we get to what falls under the bucket of a telephone call. And so if you could kind of put us in context, that would be helpful. Yes, of course, Your Honor. So I'll start with what Congress has explicitly told us. It said in 2019, in the Pallone-Thume Telephone Robocall Abuse Act, that call in section B covers text messages. We're talking about the 2019 Congress, which is far, far different than the Congress that passed this legislation. So I don't really care what the 2019 Congress thinks what this law means, and neither should you. Well, I think it's helpful when Congress has told us what it means in the past, specifically. No, it's a totally different Congress, and it's a totally different Congress. So why should Congress in 2019 be able to tell us what Congress in 1991 meant? That's our job. And the courts have done that and have found that call includes a text message. For example, Judge St. Eve, in the case Lozano, we cited in our briefs, did this exact analysis. She looked to what the meaning of call in the statute was, and she recognized it could not be limited to oral communications because the statute prohibits calls to pagers. So then she used the normal rules of statutory construction to look at the dictionary definition at the time, which said that a call is to communicate with or try to get into communication with a person by a telephone. Call is different here. I mean, we have another problem. You would agree that telephone call and telephone messages or something are different? Because, I mean, Congress says telephone solicitation is a telephone call or a telephone message. And in C-5, they used the term telephone call, and they also used the term telephone solicitations. So they were clearly distinguishing between telephone calls and telephone messages. And why is a text message not more closely analogous to a telephone message than a telephone call? Yes. So telephone solicitation is a telephone call or message. And message in the statute at the time, if you look to the statute as a whole, as Judge Shane Eve recognized, as Amicus Fashion Nova recognizes, refers to a voice recording left on an answering machine or a prerecorded message that plays when the phone subscriber answers. No question. And why isn't that closer to a text message than a telephone call? Because if we're looking for a new application, right, of the word, aren't we supposed to look at is a text message closer to a telephone call or a telephone message? And if it's closer to a telephone message, then it has to be excluded from the statute, I think. So that type of message that Congress was referring to is when a company just drops a prerecorded message. It's not trying to get into communication with someone. I agree with this interpretation, that a message in 1991, the reference was to that of a voice, what we would call today a voicemail message. And a telephone call incorporated what we call a fax under the telephone solicitation when they were making this distinction. They said a telephone call including, if we just look at the language of the statute from 1991, and so if we're under the umbrella of, even if we accept your contention that the fax falls under call, if we move to the interpretation in 1991, though, that's where we're trying to get you to position the argument is incorporating text messages under that particular umbrella. That's where we're just doing a purely statutory interpretation. Yes, and I think the Ninth Circuit recent decision in Howard by Judge Collins just three months ago when it did a de novo understanding of what the statute meant, did this normal rule as a statutory construction, what does the term call mean? It means to try to communicate or to communicate by telephone. And as the court held, quote, text messaging plainly fits within that literal definition of call because text messaging is a form of communication primarily used between telephones. So then the question is, does this modifier telephone, a telephone text message, is that different than just a text message? It's not. But I thought Congress answered that question in 2018 and 2019 when they modified the spoofing and the 227i language and included text messages. So when Congress wanted to incorporate text messages, they knew how to do it. So three responses, Your Honor, if I may. So the reason that Congress in 2018 needed to specifically add text messages to Section E was because Section E never used the term call or telephone call. The original language in Section E. But to follow your argument to its end, why would they not have used telephone call if we're going to, if you're asking us to interpret telephone call in 227C to mean text messaging? When Congress wanted to identify text messaging in 227E, they used and defined text messages. And so if the expansive statutory interpretation that you're wanting to give to 227C, why would Congress not have just used, using your argument, telephone call to do what you're suggesting that they attempted to do under 227C? That's because the amendment in 2018 was specifically responsive to the FCC's request that Congress expand E to cover text messages. The problem was there was increasing number of spoofing or scamming via text message, and FCC said, we're getting a lot of complaints. Congress, can you please add this to the statute? So it was specifically saying, can you add text messaging? And so to be clear, because it was writing in 2018, when it would have been confusing given at that point we know what a text message is, and that's modern parlance, is to say a text message, not call, it used the term text message. It used the term that the FCC had asked Congress make clear. And in doing so, it also does use the word call, but only with a modifier voice service. So a voice service call. And it didn't need to use that modifier if call only could mean voice. So there's Congress recognizing that a voice call could have other types of non-voice meanings, and it's saying, we're going to talk about a voice call in a text message, and we're going to use the word text message because that's what the FCC requested. Just to give you the site, that's 26 FCC record 8643 at 8659. And there's one other important piece of evidence in that amendment. In the consolidated appropriations act of 2018, where Congress made this change to E, it explicitly stated that nothing therein, quote, shall be construed to modify, limit, or otherwise affect any rule or order adopted by the FCC in connection with the TCPA. At that point, since 2015, the FCC had been explicit that it understood call in section C, or specifically telephone call in section C, to cover text messages. It is presumed that Congress knows what the agencies have said about pieces of legislation. That's Forrest Grove, which we cite in the opening brief on page 17. So FCC said this is how we interpret the word call or telephone call in C. And then Congress said explicitly, don't read anything we're doing in these amendments to modify anything the FCC... Meaning they weren't taking any action. So what do you make of the Supreme Court's instruction in Star, I think it's Star Athletica, that says that when Congress does not act or when Congress, you know, in action and Congress lacks persuasive authority, it doesn't mean anything in terms of statutory interpretation. So there's two things. First, Forrest Grove says it means something specifically when it's making, when it reenacts a statute without a change, then it's presumed to understand what the administrative regulatory body has said. So it's different than just inaction. It is acting... But it didn't reenact anything here. I mean, I'm with you there, and make sure I understand your point. When Congress reenacts a statute, that means the new Congress passes a statute. So we're interpreting what that Congress did, not the previous Congress. Here, the 2019 Congress doesn't make any changes to what the 1991 Congress does. So what the 2019 Congress thinks of the 1991 Act, what difference does that make to us? Well, just to be clear, this E was in 2018. 2018, I'm sorry. And Congress was clear, it expressly was clear that it doesn't want a reader to think about limiting or modifying any FCC order. So I think that's showing Congress knew what was going on with the FCC and was saying... But that's the 2018 Congress. The 2018 Congress could have agreed with what the FCC did. But that doesn't mean that the 1991 Congress anticipated what the FCC would do in 2003, or that the 1991 Congress would agree with the 2019 Congress. So what I'm asking is, where does that get you? At bottom line, similar to what Judge Pryor was asking, don't we just need to look at... We know telephone solicitation means something different than telephone call. We know telephone solicitation includes a telephone call and a telephone message. Isn't it our job to just decide whether or not a text message is more closely analogous to a telephone call in 1991 or a telephone message in 1991? Let me first take the question about solicitation and I'll come back to how we define telephone call. So the message in solicitation is not just a voice message, a voicemail message. It's a pre-recorded message where you're not trying to actually get in contact with someone. You're trying to just leave an announcement like, come to my store on the message we're seeing. So that's different than a call. Well, that's not true. The message could be, call me back. Yes, but that's not what Judge St. Eve said and what the amicus has said. That's not what the message meant. You're mentioning Judge St. Eve. What, when you're saying Judge St. Eve said? In Lozano and that's at page 1005. What, Lozano? Lozano, yeah. Was this the Seventh Circuit? Was this her... This is a district court judge. I'm sorry? That's when she sat in the district court. It's important to articulate when you say this is what Judge St. Eve said because it's almost suggesting because now she is a circuit judge that... So in Lozano at the district court, she's not writing on behalf of herself. So the district court in Lozano interpreted this particular statute 227C differently. She was interpreting 227B. Correct. Addressing... And that is a distinction that is important for purposes of 227C. Yes. And so I think that is important for us to distinguish that a district court, you're persuasive? I think it's persuasive about telephone solicitation because she specifically addressed this question. She did not. The district court. The district court did, yes. Correct. And explained that because a telephone message was about a prerecorded message, it meant something different. I think the point there is that when you're leaving a prerecorded message, you're not trying to get into communication with someone. So that's why it's different than call. That's why Congress made clear in telephone solicitation it wanted to include Who in the history of the world has left a telephone message not for the purpose of getting in contact with the person with whom they left the message? I mean, no matter what the message is. I get the same annoying text messages that you get on my phone, okay? I guarantee you who's ever sending me those text messages is trying to get a hold of me. I mean, I don't think I've ever heard of a telephone message where someone is not trying to send a message to someone. What sense does that make? If you want to say there's a sale at my store, come to my store. But you're trying to communicate with them. Come to my store. It may not say call me back, but you're certainly trying to communicate a message to the listener just like you would a text message. And I think what Congress is doing there was trying to... And you could ignore the message just like you can a text message, right? I mean, that's the problem you've got. It's not nearly... The public policy arguments that the Ninth Circuit makes are totally unconvincing because a phone call, when you're actually on the phone with someone or you answer the phone, is totally different than a text message that you can just ignore. You can silence communications on your phone. It's like mail. You don't have to go to your mailbox today or tomorrow or the next day. You don't have to check your text messages either. Well, I think that this court's ruling in In re Erickson is helpful here to explain why the fact that text messaging didn't exist in 1991 doesn't change this analysis. At issue there was a 1935 statute about... But I do agree that a text message... The question you're asking us is whether or not, and this is the way I understand, the way this has been positioned, is whether or not a text message qualifies as a telephone call as that term was used in the private right of action in 227C. That's the question that has been posed to us. That's why 11 minutes and 46 seconds ago, Judge Kirsch asked the question, give us a description of what the ordinary public meaning of telephone was in 1991. Yes, and that was a device used to communicate through sound. But the fact that that device is defined that way doesn't mean it can't have other capabilities and Congress couldn't be referring to those other capabilities. It's particularly interesting when you look at the statute, if we accept that definition that you just provided. In 1991, Congress, when they were identifying a fax, a facsimile, they said, including telephone call comma, a telephone call comma, including a facsimile. The 1991 Congress, 30 years ago, was equating a different version of a call to also be a fax. And so clearly, your argument that telephone call was more expansive, even in 1991, finds support in the statute. To broaden it beyond that of a fax or a voice call, we have to do something with 227E and 227I, where in 2018 and 2019, when Congress wanted to expand the definition to include text messages with the telephone, they gave and provided the definition of text messages. And so my question, kind of taking us back, is why wouldn't they have done that to 227C? And the reason is because the FCC in courts had made clear that's how it understood it, and it didn't need to make those changes. So the argument is that because text messages were included in 227B, we should have taken the direction from Congress, and so now we come to the post-Chevron era, and the Supreme Court has told us an agency's determination is no longer determinative, or we give it a different level of weight now, post-Chevron. So now that we're beyond Chevron, what is the statutory reason, or just from a purely statutory interpretation reason, that would have been included here? It's because normal rules of statutory... And I apologize. I see that I'm in your rebuttal time. I'm sorry. Happy to respond, Your Honor. The normal rules of statutory construction say we don't just look to the technological meaning of a word at the time. That's what this Court explicitly held in Henry Erickson and in Squillicote. Instead, we looked to the dictionary definition of the term. Call meant to try to get into communication by telephone. Text message is an attempt to get into communication by telephone. And although a telephone at the time was limited technologically to voice communications, this Court held in Henry Erickson that technology should be read to evolve. Specifically, there was an issue with a mower from 1935 statute that was horse-drawn, and the Court said that term mower from 1935 applied 50 years later to hydraulic hay binds that were tractor-mounted and had two functions, to both mow and also to condition the hay. And the Court held because technology evolves and a specific device can do two things, it doesn't mean it should just be read to limited as it could do only at the time. So just as a mower that now can both cut and condition hay, and indeed has a different term altogether, the Court held is still a mower. A telephone which communicates text and voice is still a telephone. All right. Let's leave it there. We'll give you some time on rebuttal. Thank you. And let's hear from Ms. Purdy. Good morning. May it please the Court? My name is Lauren Purdy. I'm counsel for the Applee Blackstone Medical Services, LLC. A telephone call is not a text message. It was not the same thing in 1991, and nothing about the amendments to the Telephone Consumer Protection Act since has turned telephone call into a text message. Congress meant what it said in 1991, and it does today. And this Court should affirm the judgment of the District Court for three reasons. First, the ordinary public meaning of telephone call in 1991, when the Act was enacted, did not mean text message. Two, subsequent amendments in the surrounding text of the Act demonstrate Congress did not intend then or now for telephone call to mean text message. And three, the FCC's prior orders are neither entitled to deference after Loper, Bred, and McLaughlin, nor are they persuasive in this circumstance. I think the Court's way of resolving this case is very simple. The Court can take a very narrow view and look at Section 227C-5. Let's go to just your second point, then. We've spent quite a bit of time on point one as to what is the definition. Structurally, looking at the statute itself, why would it not support that of a text message? I'm sorry, can you repeat that? Yes, structurally, just going to point two. Why would telephone call structurally not be supported to be inclusive of text messaging if we're just looking at the statute itself, structurally? Several reasons, Judge Pryor. First, if we're looking just to 227C itself, yes. A telephone solicitation is a telephone call or a message. Now, whether or not this Court accepts that telephone call or message is really meant to incorporate leaving a voicemail or calling, both of those are communications with a voice, both of those are not texting. If the Court wants to take the view that some district courts have, that telephone message might mean something like a text message. Either way, we win because Congress, specifically in the private right of action, provided for a very narrow right for consumers in the context of an unwanted telephone call. It did not say unwanted telephone solicitation. It has never amended the statute to say unwanted telephone call or text message. And really, the Court can rule just from looking at C-5 in that specific subsection of the Telephone Consumer Protection Act and rule in favor of the appellee in this case. That's really all it needs to do. The subsequent amendments in other sections of the TCPA do not undermine that telephone call in C-5 must mean telephone calls and not text messages. And if anything, they further support that telephone call in C-5 was never meant to include text messages. No one in 1991 and no one today, when they say, I made a telephone call, means I made a text message. And really, the Court's analysis could be that simple in this case. But if we look at C-1, the purpose under the policy statement under just C-1, the rulemaking, was to residential telephone subscribers' privacy rights to avoid receiving telephone solicitations. And so you would agree, what I'm hearing, is that telephone solicitations could be inclusive of text messages? We believe that telephone solicitation is really meant to only address something that is a voice call or something like a voicemail. But it's sort of heads we win, tails the other side loses here. If it does include it, it doesn't undermine our argument that telephone call in C-5 was not meant then or now to include something like a text message. If we interpret the statute to include text messages, would it also include emails? Maybe, maybe, Judge. There's a real slippery slope. Where do we draw the line? Because I can send an email from my phone just like I send a text message from my phone. Exactly. There's a real slippery slope problem with the appellant's argument in this case. And I think you can receive email alerts on your phone in the same way that you receive text message alerts or not. I mean, text messages, I think, I'm not the most technologically savvy person in the world, but I think you can silence text messages so they don't even appear on your phone. Yes, I do it every night. Yes, exactly. And that's really a fundamental problem with the appellant's argument here, is the slippery slope component of sort of transferring in a 1991 definition all of the ways that we use cell phones now. Now, we agree, cell phones do a lot of things now that phones didn't use in 1991. That doesn't mean because phones have more capabilities now that that changes the meaning of telephone call in 1991. That has never been. Well, if we look here, and we wanted to spend some time in 227B, where the FCC has determined that this was inclusive of text messages. Are you able to distinguish that interpretation from 227B and not pulling it into 227C? Yes, Judge Pryor, several ways. So first, 227B1A talks about prohibiting any call. Correct. Whereas 227B1B talks about prohibiting initiation of any telephone call. Now, the FCC's… Artificial or prerecorded. Yes, exactly. Now, the FCC's 2003 order that has created the problem that we are here for today, in a way, was only directed to 227B1A. And, in fact, the 2003 order cites extensively to 227B1A3's subsection that relates to communications to things like paging services, radio services, other forms of communication where someone is calling something that is not a phone. And so the fact that the FCC in 2003, and reiterating several times, is narrowly focused only on, really, 227B1A and any call versus telephone call, supports our argument. It doesn't undermine our argument. Those terms were used not only in the same statute, in the same subsection of the statute. And we have to presume that Congress meant something different when, in the same subsection, it uses any call and telephone call. It says, under B1A, to make any call, and then under B1A3 to any telephone number assigned to a paging service, cellular telephone service, and it goes on from there. I don't see telephone call. Under B1B, it uses to initiate any telephone call. Yes, that's exactly my point, Judge Pryor. So in 227B1A, the term any call is used, and in 227B1B, the term telephone call is used. So within the same subsection, 227B, Congress used two different terms. So you are agreeing then with the interpretation that call could, if it's as broad as call and leave it at call, it can include fax. We could have been talking about text messages using the FCC's determination, but when they got to B1B, when they directed it to a telephone call, they did not, I guess, provide an explanation or interpretation of what that meant. Not necessarily, Judge Pryor. So candidly, the FCC's 2003 sort of grafting pronouncement because it believed text messages were harmful to consumers, which is not necessarily in dispute today. I don't like text messages either. The FCC created... You can't see behind you, but there are a lot of people nodding. They don't like them either. I get it. I get it. The FCC created the uncertainty that the overruling of Chevron has now negated. So we wouldn't agree necessarily that when Congress wrote any call, it was meaning to incorporate something like text messages. The fairest reading that we can come up with is that what Congress was trying to capture is that in 227B1A3, a communication with a telephone is going to something that's not a telephone, but it's still you're picking up the phone and you're calling.  So we wouldn't necessarily concede that, Judge Pryor. And the FCC's pronouncement in 2003, which has sort of been carried forward, without any analysis, it's really just a passing sentence in 2003 from the FCC that has created uncertainty and case law following from that under the old Chevron deference scheme that really is not supported by the text of the statute. And now today, we're here arguing about whether a telephone call means text message because in 2003, the FCC said in a different provision that a call should include an SMS message. And so there's really nothing in the statute that supports the appellant's argument. If Congress intended to provide for a private right of action for unwanted text messages, it could easily have done so. It didn't do it in 1991 and hasn't done it today. And this is not an uncommon situation. There are many federal statutes where there is no private right of action at all. Private right of action is the exception, not the norm. The Federal Trade Commission Act provides exhaustive enforcement authority by the FTC to deal with unfair competition. It doesn't provide for a private right of action. But the private right of action was because of the disruptiveness of the phone call coming in at all times of the day and night. And so Congress' intent in looking at this, moving it from 1991 to 2026, text messages, would they still be just as disruptive? Judge Pryor, I think phone calls are more disruptive. Some people in the gallery behind me that I can't see may be disagreeing that text messages maybe are more disruptive. But Congress in its judgment in 1991 was dealing with the situation where a family is sitting around a table at dinner and they receive a phone call on their phone on the wall that is interrupting them. Congress did not intend then, and nothing about the ordinary public meeting then or the amendments to the statute now reflects that Congress, in its judgment, has decided to also allow for a private right of action for unwanted text messages. And my colleague who will be speaking next will talk about all of the public policy reasons for why Congress might have thought that and might have believed that. The reality is the text says what it says and it means what it says. No one says telephone call and means text message. There's nothing in the statute that means that. The district court and its well-reasoned opinion has recently been reaffirmed by other district courts in the country in the last few months. We've submitted a supplemental Rule 28J letter with four or five of the most recent decisions. Those decisions correctly apply the rules of statutory interpretation. This court should find that telephone call in C-5 does not include text messages. We ask this court to affirm the judgment of the district court. Thank you. Thank you, Ms. Brady. Okay, next we'll hear from Mr. Balikin. May it please the court, Russell Balikin, on behalf of the Chamber of Commerce of the United States as amicus curiae. I want to pick up on the conversation on the definitions and the original meaning of the phrase telephone call in 1991. I think the move that the plaintiffs are making here, I think, is important, as the court considers it. The court considers the interpretation of this term. A telephone call is never referred to a text message, not in 1991, not today. Everyone agrees that- It's a little hard for me to hear you. I'm sorry. Can you speak up for me? No, that doesn't project. That just records. You just have to speak up. Everyone agrees that dictionaries in the early 1990s referred to a call as something to the effect of an act or instance of telephoning or to communicate with by telephone. As Your Honors have asked, the relevant question is, what is a telephone in light of these definitions that expressly reference a telephone? When you flip over a few pages in these same dictionaries, you'll see that a telephone is something to the effect of an instrument of reproducing sounds at a distance. All the dictionaries are the same. An electronic device or system that transmits voice or other acoustic signals to remote locations- Yes, Your Honor. The FCC orders should not be given any weight. Chevron has been overruled, as Your Honor knows, so there is no formal deference for this court to afford to the FCC. What about the Skidmore deference? Yes, Your Honor. The Skidmore factors, none of them are applicable here. So when you think about the thoroughness of consideration of the FCC's order, this is a single unexplained sentence that refers, I think paradoxically, to the idea of a text call, which is not how ordinary users of the English language use that phrase. When you consider the validity of the court's- Does the plaintiff argue for Skidmore deference? No, Your Honor. I didn't see it. There was a very fleeting reference, but no argument developed, and so I don't think that has been presented to the court. But in any event, I don't think Skidmore deference would be appropriate. It's contrary to the plain meanings of the validity of reasoning. It's not a consistent or contemporaneous interpretation. This was first issued 12 years after the TCPA was enacted, and the TCPA itself and the FCC's original order interpreting the TCPA were consistent in referring to voice messages or referring to everything- every reference to a call was consistent with a voice, including tying up a telephone line, for example. And then certainly the FCC has specialized experience, but when you look at the paragraph that addresses this, it didn't use it. It didn't engage with the fact, for example, that a telephone call is a real-time intrusive imposition on a family dinner, for example, whereas a text message is an asynchronous message that you could come back to later. You don't have to engage with it at the moment. And then there is no other power to persuade. So when you look through the Skidmore factors, there is no basis for affording it anyway. And there could be significant mischief from adopting the plaintiff's interpretation, and I may focus and close on that. The TCPA provides statutory penalties of $500 per violation for even negligent violations, and then up to trouble damages, $1,500 per violation for willful or knowing. When a company is hit with a complaint like this, it's a significant event, because even if the company has meritorious defenses and thinks that after discovery it can show that it's put in place all the processes, at the motion-to-dismiss stage, they're bound by the allegations of the complaint. And so every company that's faced with these lawsuits has to decide if they're going to litigate and expend those resources or if they're going to capitulate and settle. And so expanding the definition of telephone call could have significant effects on American businesses. And one of the former FCC commissioners even described the TCPA as the poster child of lawsuit abuse. Because of the statutory damages, there's an incentive to bring these cases even when it's not justified. We do think the focus on the 1991 definitions is the right way for the court to go. It does not need to issue a broad ruling to reject the idea that the cause of action here includes text messages. And so we would ask the court to affirm. Okay, thank you. Okay, Ms. Garland, we'll give you two minutes for rebuttal if you'd like to add anything. Thank you, Your Honor. Just a few points. The reason that the statute uses the term telephone to modify a call is to specifically limit communications to telephone rather than other devices. That's the work that telephone is doing. For example, in B1B, it refers to telephone calls because it's talking about calls to residential telephone. Unlike BA3. Why wouldn't it be doing the work of limiting it to voice communication? Why isn't that the work that telephone is doing? Telephone voice or sound? At the time, that is how telephones were used. But this court has been clear in Squillicote that statutes can apply to circumstances not in existence. So what about my email question? Your email would not count because the statute has given a limiting principle of a call to a, quote, telephone number. Can't you email a telephone number? I think I've done that before by mistake, actually. If you're sending the communication to a telephone number, it would be covered. But if it's to an email address, it would not be covered because the statute limits a C5 just to telephone numbers. And I want to step back for a moment and note the policy point here. Companies are not on the hook if they follow clear rules. If someone doesn't want to be contacted, they have to affirmatively go and put their number on the do not call list, and then the company has to nevertheless call them or text them not just once but twice. It's not hard for companies to abide by this rule. What this is trying to do is protect people from being interrupted in the course of daily life at dinner with their family while at work by unwanted telemarketing text messages, and they've explicitly told companies they don't want the message. And again, all that they need to do is just check the do not call list. So this is not an undue burden on them. And I just want to end with this point that the Supreme Court made clear at Wisconsin Central, statutes are not, quote, frozen in time. So we have to look to what the term means modern day, and it can apply to that as well. Thank you. Okay, thank you very much. And thank you to all counsel in case we take another advisement.